The State *v.* Walker.

---

## THE STATE *vs.* STEPHEN WALKER.

Acting as the servant of a person licensed as a retailer, under the *stat.* 1834, *c.* 141, will not excuse such servant for knowingly violating the provisions of the statute.

One license under that statute, will not authorize the person or persons licensed to conduct the business in more than one place.

If one without license sell wine, brandy, &c. in small quantities to such as he may victual, and to others calling therefor, to be drank in his house or cellar, he is guilty of the offence prohibited in the first section of the statute.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. presiding.

The indictment, the license, and the instructions of the Judge to the jury appear in the opinion of this Court. *Atkins & Walker*

to whom license was granted, kept a store in one street attended by themselves, and also kept another store in another street attended by the respondent, *Stephen Walker*. The counsel for *Stephen Walker* requested the Judge to instruct the jury:— 1. That if they believed the defendant to be the mere servant, or bar-keeper, under *Atkins & Walker*, the indictment could not be sustained. 2. That *Atkins & Walker*, having a general license to retail within the city, have a right to retail in both their stores or places of business. 3. That selling in such a manner only as he lawfully might under a license as a common victualler, to such as he victualled, to be drank in his cellar, and to others who might call (excepting they had already taken too much) spirituous liquors in small quantities, to be drank by those who called for such, would not constitute him a common seller of wine, brandy, &c., but that he should have been prosecuted for the individual offences, or indicted as a common victualler.

*Blake*, for the respondent, contended, that the instructions requested ought to have been given, and that those given were erroneous; and cited and commented upon the *stat.* 1834, c. 141, and the case, *State* v. *Burr*, 1 *Fairf.* 438.

*Goodenow*, Attorney General, for the State.

As to the first request, he should believe the Judge to be right, rather than the counsel, until some case could be referred to, showing that a man had been excused for a criminal offence, knowing at the same time that he was violating the law, merely because he acted as the servant of another.

To have given the second instruction requested, would have defeated the object of the law, as well as its spirit and effect. If two stores may be kept under one license, any number may be, and they may be scattered over a whole city. The law is wholly inconsistent with this claim. The licensing board are to fix the number to be licensed; and whether the applicants "are persons of sober life and conversation, and of good moral character, and suitably qualified for the employment;" and but one bond is to be given under one license. These provisions would be useless on the construction contended for.

The case cited, *State* v. *Burr*, is decisive against the third request.

The case was continued for advisement, and the opinion of the Court drawn up by

EMERY J. — At the Court of Common Pleas, *May Term*, 1837, the defendant was indicted, for that on the 1st day of *Feb.* 1837, and on divers days and times from that day to the day of taking that inquisition at *Bangor*, he did presume to be and was a common seller of rum, gin, brandy and other strong liquors by retail, and in less quantities than twenty-eight gallons at a time, without being duly licensed according to law, or without any authority so to do, against the peace and contrary to the form of the statute, &c. That statute was passed the 13th of *March*, 1834. The defendant among other evidence, introduced a license to " *Atkins & Walker.*" It was dated, " City of *Bangor, Sept.* 5, 1836. Pursuant to an act of the State of *Maine*, passed *March* 13, 1834, *Atkins & Walker* is hereby licensed by the board of Aldermen and City Clerk of said city to retail within the said city, for a term of one year from the date hereof."

The exception against the direction of the Judge, that " being a servant or bar-keeper of *Atkins & Walker* would not justify the defendant, if he knew the selling to have been in violation of the statute," cannot prevail. The instruction is altogether as favorable to the defendant as the law will sanction.

In some civil concerns, the servant acting within the scope of his employment, if lawful, and such as may reasonably be presumed, conformable to his master's orders, is protected. The servant is not liable for the mere negligence of the master.

But when, as in this case, yielding credit, as we must, to the verdict, the servant has been engaged *knowingly in an unlawful act,* even supposing it *in his master's service,* the servant becomes amenable to the penalties of the law. For the wrongful act of the servant, the authority of the master will not be implied. If the servant, by the command of his master, violates the law knowingly, both are liable.

The second instruction, " that the license of *Atkins & Walker,* would not apply to and authorize them to sell under it in more than one distinct place," was founded upon a just construction of the statute.

In considering the object and design of the law from its title, we must perceive an intention to produce something like regulation of retailers. On looking into the sections of the statute, we discover that the persons to be licensed, are to be of sober life and conversation, of good moral character, and suitably qualified for the employment, and it is imposed as a duty, that this qualification and the number deemed necessary be ascertained by the judgment of the selectmen, treasurer and clerk in towns, of assessors, treasurer and clerk in plantations, of aldermen and city clerk in cities. Each person who is so approved, before being licensed, is to give bond with sufficient surety or sureties in the penal sum of $300, on the condition prescribed in the statute. The alleged servants here who are selling in another street at an establishment, different from the store in *Wall Street*, give no bond. Upon the principles insisted on by the defendant, we cannot perceive, why it should be requisite to license more than one person in a town or city, for he might set up as many stores and establishments as he pleased, and nominally, or really, hire his servants in every house, or store, or establishment in the town or place, within which he is licensed. Such a construction would be mischievous, and defeat the intention of the law. We believe that the intention of the legislature was to secure the full execution of the law; because by an additional act, *c.* 725, passed on the 24th of *March*, 1835, " in addition to the mode of recovery of any fine, forfeiture, or penalty provided in the former act of *March*, 13, 1834, which was by an action of debt, provision was made, that a recovery may be had by complaint or indictment. And no prosecuting officer shall discontinue any legal process commenced or to be commenced under this or the former act, except by the direction of the Court."

The 5th section of the statute of 1834, provides, that " no innholder, victualler or retailer shall suffer any disorderly conduct in his house, shop or dependencies thereof, nor suffer any person to drink to drunkenness or excess in his or her house or shop, or suffer any minor, or servant to sit drinking there," indicating in our judgment, but *one house*, and *one shop*, as the place to be protected by one license to one firm.

Upon such facts as are stated in the exceptions, we are of opinion, that the third requested instruction was rightly declined to

be given. It appears, that matters alleged in defence were denied and contested by the prosecution, and the cause went to the jury on the whole evidence given on the trial. Upon the grounds claimed in defence, as stated in the exceptions, that requested instruction could not properly be required.

The exceptions must be overruled, and the cause remitted to the District Court for further proceedings.