198 So. 437

### HARRIS BROS. v. STATE.
#### 4 Div. 597.

Court of Appeals of Alabama.
June 4, 1940.

Rehearing Denied June 18, 1940.

Affirmed on Mandate Nov. 6, 1940.

Mulkey & Mulkey, of Geneva, for appellants.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for the State.

BRICKEN, Presiding Judge.

The State of Alabama brought suit against Harris Brothers, appellants, to recover a special tobacco license, or privilege tax, for each of the years 1936–37 and 1937–38, alleged to have been fixed under the General Revenue Act of Alabama, 1935, and under an amendatory act thereof, approved March 2, 1937, which privilege tax for said years the State alleged was due from the defendants for selling tobacco and tobacco products from a rolling store operated by them in Geneva County, during said years, and which tax the State alleged the defendants, after citation, had refused and failed to pay.

The complaint filed by the State, and also the judgment of the lower court, from which this appeal was taken, appear in full in the report of the case.

The defendants, a partnership, were engaged in the mercantile business at Slocomb, Geneva County, Alabama, a town of less than 1,000 inhabitants, in the years 1936, 1937 and 1938. Their store, or place of business, in said town, was kept open during business hours throughout each of

said years, and for the privilege of conducting their said mercantile business aforesaid, said partnership paid the regular license, or privilege tax, levied by law, to the State of Alabama, County of Geneva. Among the articles of merchandise sold by said partnership from their said store in Slocomb were tobacco and tobacco products, for the privilege of selling which from said store said partnership also paid the special tobacco tax levied by law.

In addition to the merchandise business conducted by the defendants in the town of Slocomb, said partnership took from their said store a part of their stock of goods, wares and merchandise, including tobacco and tobacco products and loaded it upon and into a motor vehicle, properly equipped for the purpose, and sent said merchandise out on a regular route, or itinerary, and on a regular schedule each business day. This motor vehicle, or rolling store, would leave defendants' place of business in Slocomb at approximately 8 o'clock A. M. and would return thereto that same day, upon the completion of its regular schedule route for that day, usually completing the outgoing and incoming round trip by 8 o'clock P. M.

The defendants sold goods, wares and merchandise, including tobacco and tobacco products, from this motor vehicle, or rolling store, to its customers each day, on the schedule route for that day in Geneva County. For the privilege of operating its rolling store over and along the public highways of Geneva County, and selling goods, wares and merchandise therefrom, the defendants paid to the State of Alabama, and County of Geneva, a license or privilege tax of $150 for each of said years, as provided by law, $100 of said amount being for the State, and $50 thereof for Geneva County.

With reference to the special tobacco and tobacco products license, or privilege tax, Mr. W. E. Harris testified as follows: "On demand of the State of (or) some agent of the State for 1936–37, and subsequent years we paid the tobacco tax charged against the rolling store in the sum of $3.50 obtaining the license from the Judge of Probate; the population of Slocomb, according to the last census, is a little less than one thousand people and we do business at that place."

The above was all the testimony with respect to the special tobacco license, or privilege tax for the year 1936–37. With reference to said special tax for the year 1937–38, the defendants produced two licenses, Nos. 75 and 76, each issued to Harris Brothers and each countersigned by the Probate Judge of Geneva County. Each of these licenses acknowledged the deposit with said Judge of Probate of the sum of $2.00 for the State, and of the sum of $1 for the use of the county, as required by law, under each of which said licenses said Harris Bros. were authorized from and after the date of said licenses (October 13, 1937) to transact business as Dealer in Cig., Tob., Snuff, Cigars and Stogies at Slocomb, Alabama. As to these licenses Mr. W. E. Harris testified that one was for the store at Slocomb, and the other for the rolling store.

The rolling store license for which defendants paid $150 was countersigned by the Judge of Probate of Geneva County on October 13, 1937, and authorized defendants to transact business as "Operate Rolling Store at Geneva County, Alabama," and was numbered 74. Of course it is apparent that the rolling store license, and the two special tobacco licenses were obtained by the defendants at the same time, and it is also equally apparent that one of the special tobacco licenses was obtained for the rolling store, and one for the store, or place of business of defendants at Slocomb.

It, therefore, appears from the undisputed testimony that the defendants paid a special license or privilege tax of $3 for the years 1936–37, and 1937–38, two years, each respectively for the privilege of selling tobacco and tobacco products from their rolling store, operated in Geneva County, and for the operation of which in said county, they without dispute paid for each of said two years a privilege or license tax of $150.

The State contends, however, that the amount of the special tobacco license tax due from the defendants and which they should have paid for each of said two years was not $2 to the State, and $1 to the county, but that the sum was $15 to the State, and $7.50 to the county, or $22 for each of said years. So the question at issue between the parties is what was the correct amount of special tobacco license, or privilege tax which Harris Bros. should have paid to the State and county for the privilege of selling tobacco and tobacco products from their rolling store in Geneva County, during the years 1936–37 and 1937–38.

542

■ Schedule 32, Section 348, of the General Revenue Act of 1935, page 451, fixes the license, or privilege tax to be paid the State, for the privilege of selling tobacco and tobacco products, as follows: In cities of 25,000 inhabitants and over, $15; in cities or towns of 10,000 inhabitants and less than 25,000 inhabitants, $10; in cities or towns of 5,000 inhabitants and less than 10,000, $5; in cities or towns of 2,000 and less than 5,000 inhabitants, $3; *in all other places,* whether incorporated or not, $2. Under the provisions of said act the above amounts are to be paid for the use of the State. The amounts to be paid for the use of the county are one half of the amounts to be paid for the use of the State. In other words, the effect of said schedule was to fix the total license, or privilege tax, for the privilege of selling tobacco and tobacco products from a rolling store in the rural sections of Geneva County, for both State and county, at the sum of $3, for the reason that the rural section of Geneva County is a place other than an incorporated city or town.

The above schedule of tobacco and tobacco products licenses was in force and effect October 1, 1936, for the license tax year beginning October 1, 1936, and ending September 30, 1937, The defendants, according to the undisputed testimony, paid a tobacco and tobacco products license tax of $3 to the State of Alabama, and County of Geneva, along with an issuing fee of 50 cents to the Judge of Probate of said county, for the privilege of selling tobacco, and tobacco products from their rolling store in Geneva County, Alabama, during said year. It is true that upon the trial of the case, counsel for the State said: "According to the records we have only two licenses for the years 1936-37, one for the rolling store and one for the tobacco products. The next year, however, he was charged for the rolling store and two for tobacco, isn't that correct?" The testimony of Mr. W. E. Harris was clear and direct that for 1936-37 and subsequent years, the defendants paid the tobacco license charged against the rolling store in the sum of $3.50, obtaining license from the Judge of Probate. If the State, upon the trial of the case had the tax license records of Geneva County for the year 1936-37 in its possession, those records should have been introduced in evidence if they refuted the testimony of Mr. W. E. Harris. This was not done, and so the only testimony in this record, with respect to the tobacco license tax due from defendants for the privilege of selling tobacco and its products from their rolling store in Geneva County for the year 1936-37 is that this license tax was paid.

The trial court erred, therefore, in its judgment finding and adjudging that the defendants were due the State the sum of $30.43 as a license tax, fees, interest, costs and charges for the tax license year beginning October 1936, and ending September 30, 1937.

The testimony in this case shows, without dispute, that the defendants paid a tobacco license tax for the year beginning October 1, 1937, and ending September 30, 1938, to the State of Alabama and County of Geneva, in the sum of $3 for the privilege of selling tobacco and tobacco products from their rolling store in Geneva County, during said year.

The State contends that said sum of $3 was not the correct amount to be paid by the defendants for said license, or privilege tax for said year for the reason that Schedule 146, Section 348, of the General Revenue Act of 1935, page 499, was amended by an Act of the Legislature of Alabama, approved March 2, 1937, Genl. and Local Acts of Alabama, Special Session 1936-1937, page 277, under which amendatory act transient vendors or peddlers, selling tobacco and tobacco products, were required to pay, as claimed by the State, the maximum license levied under Schedule 32, Section 348, of the General Revenue Act of 1935, or $15 to the State, and $7.50 to the county, $22.50 in all, fixed by said Schedule for the privilege of selling tobacco and tobacco products in cities of 25,000 inhabitants and over, and this for the privilege of selling tobacco and tobacco products from a rolling store in the rural section of Geneva County, Alabama.

The last sentence in Schedule 146, Section 348, of the General Revenue Act of 1935, reads as follows: "The payment of the privilege license required by this Schedule shall not authorize any transient vendor or peddler to sell any goods, wares or merchandise for which a higher or specific license is required without the payment of such license in addition to the license herein levied, or to sell any goods, wares or merchandise that are by law required to be sold at a fixed location."

■ Tobacco, and tobacco products are goods, wares or merchandise for the privilege of selling which, a specific license is

required under Schedule 32, Section 348, of the General Revenue Act of 1935. As applied to this case the clear meaning of the above quoted sentence is that transient vendors or peddlers, duly licensed as such, are not authorized to sell tobacco and tobacco products without paying the special tobacco license, applicable to the city, town or place where they do business, and fixed by Schedule 32, Section 348 of the General Revenue Act of 1935, and that their transient vendors or peddlers license did not authorize them to sell any goods, wares or merchandise that are by law required to be sold at a fixed location, at all.

The last sentence in Schedule 146, Section 348, as amended by the Act, approved March 2, 1937, supra, is identical with the above quoted sentence of Schedule 146, Section 348, of the General Revenue Act of 1935, except with reference to goods, wares and merchandise that are by law required to be sold at a fixed location. As to this class of goods, wares and merchandise, amended Schedule 146, Section 348, of the General Revenue Act of 1935, Genl. and Local Acts of Ala.Sp.Sess.1936–37, page 277, provides that transient vendors and peddlers, duly licensed as such, are not authorized to sell any goods, wares, or merchandise that are by law required to be sold at a fixed location, "except upon the payment of the maximum license levied under the Schedule or Schedules of this chapter for the sale of merchandise at a fixed location."

■ This court knows of no provision of law, and is cited to no such provision, that requires, or required, tobacco and tobacco products to be sold at a *fixed location,* either under the General Revenue Act of 1935, or any other Statute of this State. It is, therefore, clear to this court that the "maximum license" provision of the last sentence of the amendatory act, approved March 2, 1937, does not apply to tobacco and tobacco products.

It being, as stated, without dispute that the defendants paid a special, or specific, tobacco license, in the sum of $3 for the privilege of selling tobacco and tobacco products from their rolling store in Geneva County, for the year 1937–38, it is clear to this court that the trial court below erred in rendering judgment in favor of the plaintiff (State) and against the defendants for the sum of $58.01, together with the costs of suits.

It is contended by appellants that the license tax of $150 collected from the defendants for the privilege of operating their rolling store in Geneva County was excessive, inasmuch as it is contended by counsel for appellants that the defendants in the court below were not "transient vendors and peddlers," as defined under Schedule 146, Section 348, of the General Revenue Act of 1935, but were "transient dealers," as defined under Schedule 147, Section 348, of said act, page 501, under the last named Schedule 147, the license or privilege tax fixed for the operation of a rolling store is $30 for the State, and $5 for each county in which said rolling store operates.

■ Sub-classification or definition (e) of said Schedule 147, Section 348, of the General Acts of Alabama 1935, declares that the term "transient dealer" includes— "All persons who go from person to person, or house to house, or place to place, or dealer to dealer, and sell or offer for sale, or exchange the goods, wares and merchandise which they carry with them, and who deliver the same at the time of, or immediately after the sale, or without returning to the place of business operations (a permanent place of business) between the taking of the order and the delivery of the goods, wares and merchandise."

Counsel for appellants assert that the defendants in the operation of their rolling store in Geneva County are included in the above classification (e) of Schedule 147, Section 348, of the General Revenue Act of 1935. This court is of the opinion that the defendants, in the operation of their rolling store in Geneva County, went from person to person, or house to house, or place to place, and sold, or offered for sale, their goods and wares and merchandise for use or consumption by the person who bought them, as the testimony without dispute tends to show. Persons operating a rolling store, and who go from person to person, house to house, or place to place, *are prohibited* by the provisions of Schedule 147, Section 348, of the General Revenue Act of 1935, from selling, or offering to sell their goods, wares and merchandise for use or consumption by the purchasers thereof, *without the payment of the transient vendors or peddlers license,* required by Schedule 146, Section 348, of said General Revenue Act, which, where the person, or persons,

544

operating said rolling store use only one motor vehicle, which the testimony tends to show defendants did, is fixed by said Schedule at $100 for the State, and $50 for the County. We are therefore of the opinion, and so hold, that the proper amount which the law of this State required the defendants to pay for the operation of a rolling store, as aforesaid, during the years 1936–37, and 1937–38, was $150 for each year, which the evidence shows they paid.

It appearing to this court that the defendants have paid in full the special tobacco license which the law of this State fixed for the privilege of selling tobacco and tobacco products from their rolling store in Geneva County, for each of the years 1936–37 and 1937–38, which fact this court finds from the testimony introduced upon the trial of the case in the court below, it is the judgment of this court that a remandment of this case to the court below for another trial is unnecessary and will serve no good purpose. It is therefore ordered and adjudged that the judgment of the lower court, be and the same is hereby reversed and that a judgment be here pronounced and entered in favor of the defendants (appellants).

Reversed and rendered.

PER CURIAM.

Affirmed on authority of Harris Bros. v. State, Ala.Sup., 4 Div. 161, 198 So. 443.